UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


NINA E. HOWARD,
        Plaintiff,

v.

MICHAEL J. ASTRUE,[1]
Commissioner of Social Security,
        Defendant.

Civil No. 06-465-HA

AMENDED
OPINION AND ORDER


HAGGERTY, Chief Judge:

      Because some clarification was necessary regarding the scope of permissible remands in these kinds of actions, the prior ruling in this matter [17] issued on May 3, 2007, is VACATED AND AMENDED. This Amended Opinion and Order, which provides a result identical to that issued on May 3, 2007, and which is identical in form and substance except for some discussion about jurisdiction and the authority to remand these matters, shall be this court's ruling in this case.

---

[1] On February 12, 2007, Michael J. Astrue became Commissioner of Social Security and he is substituted in these proceedings as such. 42 U.S.C. § 405(g); Fed. R. Civ. P. 25 (d)(1).

1 -- OPINION AND ORDER

Plaintiff Nina E. Howard brought this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act (the Act). Plaintiff requests review of a final decision by the Commissioner of the Social Security Administration (SSA) denying her application for Supplemental Security Income benefits (SSI). She seeks an order reversing the Commissioner's decision and remanding her case for an award of benefits.

This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). After reviewing the record of this case and counsel's arguments fully, this court concludes that the Commissioner's decision must be reversed and remanded for an immediate calculation and award of benefits.

## ADMINISTRATIVE HISTORY

Plaintiff applied for SSI on February 24, 2003, with a protected filing date of February 10, 2003. Tr. of Admin. R. (hereinafter, Tr.) 14, 71. The claim was denied on initial consideration and again on reconsideration. Plaintiff was granted a hearing at which she was represented by counsel. Testimony was given by plaintiff and by a vocational expert (VE) called by the Administrative Law Judge (ALJ). The ALJ found that plaintiff was not entitled to SSI. The Appeals Council declined plaintiff's request for review. This decision became the Commissioner's final decision upon the Appeals Council's denial of review. *See* 20 C.F.R. §§ 404.981, 416.1481, 422.210.

Plaintiff subsequently filed a Complaint seeking this court's judicial review. The first two sentences of Section 405(g) provide that any individual may obtain a review of a final decision of the Commissioner of Social Security made after a hearing to which the individual

was a party, irrespective of the amount in controversy. This review is obtained in the district court of the United States for the judicial district in which the plaintiff resides.

## FACTUAL BACKGROUND

Plaintiff was born on April 10, 1959. Plaintiff alleges disabilities with an onset date of October 13, 1995. Tr. 14. The SSA amended this onset date to February 11, 2003, the date upon which she met all requirements for possible eligibility for SSI. *Id*.

Plaintiff has a general equivalency certificate. Tr. 15. Her past work experience included warehouse packer, motel maid, yard worker, warehouse laborer, and babysitter. Tr. 15.

Plaintiff alleges myriad disabilities, including spondylosis, upper and lower back pain, chronic neck pain, asthma, frequent ear infections with active drainage, hearing difficulties, poor knees, nausea, vertigo, and cardiac illness. Details of her medical history will be addressed as necessary throughout this ruling.

## STANDARDS

To establish an eligibility for benefits, a plaintiff has the burden of proving an inability to engage in any substantial gainful activity (SGA) "by reason of any medically determinable physical or mental impairment" that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for benefits because of disability. 20 C.F.R. §§ 404.1520, 416.920; *see also Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

First, the Commissioner determines whether the claimant is engaged in SGA. If the claimant is so engaged, disability benefits are denied.

3 -- AMENDED OPINION AND ORDER

If not, the Commissioner proceeds to step two and determines whether the claimant has a medical impairment that meets the regulatory definition of "severe." 20 C.F.R. § 404.1520(a). If the claimant lacks this kind of impairment, disability benefits are denied. 20 C.F.R. § 404.1520(c).

If at least some of the claimant's impairments are severe, the Commissioner proceeds to the third step to determine whether the impairment is equivalent to one or more impairments that the Commissioner has recognized to be so severe that they are presumed to preclude SGA. *See* 20 C.F.R. § 404.1520(d). These are listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing of Impairments"). If the claimant's condition meets or equals one in the Listing of Impairments, the claimant is presumed conclusively to be disabled.

If the impairment is not one that is presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from engaging in work that the claimant has performed in the past. If the claimant is able to perform his or her former work, a finding of "not disabled" is made and disability benefits are denied. *See* 20 C.F.R. § 404.1520(e).

If the claimant is unable to perform work that he or she has performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his or her age, education, and work experience.

In this five-step framework used by the Commissioner, the claimant has the burden of proof as to steps one through four. Accordingly, the claimant bears the initial burden of establishing his or her disability.

However, in step five, the burden shifts to the Commissioner to show there are a significant number of jobs in the national economy that the claimant can perform given his or her residual functional capacity (RFC), age, education, and work experience. *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996).

If the Commissioner cannot meet this burden, the claimant is considered disabled for purposes of awarding benefits under the Act. *See* 20 C.F.R. § 404.1520(f)(1). If the Commissioner meets this burden, the claimant is deemed not disabled for purposes of determining benefits eligibility. 20 C.F.R. §§ 404.1566, 404.1520(g).

The Commissioner's decision must be affirmed if it is based on proper legal standards and its findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999); *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Substantial evidence is more than a scintilla but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (citation omitted). The Commissioner's denial of benefits is upheld even if the evidence is susceptible to more than one rational interpretation, as long as one of the interpretations supports the decision of the ALJ. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citation omitted); *Andrews*, 53 F.3d at 1039-40.

The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. *Tackett*, 180 F.3d at 1098 (quotation and citation omitted). The Commissioner, not the reviewing court, must resolve conflicts in the evidence, and the Commissioner's decision must be upheld in instances in which the evidence would support either

5 -- AMENDED OPINION AND ORDER

outcome. *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003) (citation omitted); *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1998) (citation omitted).

However, a decision supported by substantial evidence still must be set aside if the Commissioner did not apply proper legal standards in weighing the evidence and making the decision. *Reddick*, 157 F.3d at 720-21.

## SUMMARY OF THE ALJ'S FINDINGS

At step one of the five-step analysis used by the Commissioner, the ALJ found that plaintiff had not engaged in SGA since February 11, 2003. Tr. 25.

At step two, the ALJ found that plaintiff's combined impairments were severe, including cervical and lumbar pain, hearing loss, and asthma. *Id.*

At step three, the ALJ found that plaintiff's impairments were not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulation Part 404. *Id.*

At step four, the ALJ found that plaintiff was unable to perform her past relevant work and that her RFC allowed a modified range of light work. Tr. 23, 25.

The VE's testimony at plaintiff's hearing identified several jobs that the VE concluded plaintiff could perform. These occupations included house cleaner, garment sorter, routing clerk, and food and beverage clerk. As a result, the ALJ concluded that at step five plaintiff was not entitled to SSI. Tr. 24-26.

## QUESTION PRESENTED

Plaintiff argues that the ALJ erred by: (1) failing to recognize that her mastoiditis/chronic ear infection is a severe condition; (2) rejecting the opinions of treating and examining doctors;

6 -- AMENDED OPINION AND ORDER

(3) rejecting plaintiff's subjective testimony about her symptoms; and (4) relying on an incomplete vocational hypothetical question.  As a result of these errors, plaintiff seeks an order reversing the Commissioner's decision and remanding for an award of benefits.  Because this court determines that the ALJ erred in rejecting both some medical opinions presented and plaintiff's testimony, further analysis regarding the scope of impairments found to be severe and the hypothetical questions presented need not be reached.

## ANALYSIS

1. Treating Physician Testimony

As noted above, plaintiff argues that the ALJ erred in rejecting several opinions of treating and examining doctors.  Examining orthopedic physician Stephen J. Thomas, M.D., saw plaintiff on May 3, 2005.  He opined that plaintiff is "very limited" and also noted that plaintiff's hearing impairment would "interfere with her ability to follow directions."  Tr. 205-09.

The ALJ rejected Dr. Thomas's opinions on various grounds, including that "Dr. Thomas based his opinions entirely on subjective statements by the claimant;" there was no supporting evidence such as x-rays to bolster the doctor's opinion, the doctor failed to diagnose plaintiff's cervical limitations that were identified by other doctors, and Dr. Thomas was the only examining physician who was compelled to repeat his questions to plaintiff because of her hearing difficulties.  Tr. 23.  For these purported reasons, the ALJ declared that "I am not giving Dr. Thomas' report much weight at all."  *Id*.

The ALJ also briefly considered and rejected the opinions of treating physicians Drs. Sibell and Chesnut.  Plaintiff saw Dr. Sibell on May 10, 2002.  Doctor Sibell noted tenderness over the rhomboids bilaterally at the lumbosacral junction and over both greater trochanters,

decreased lumbar range of motion, dizziness, diminished reflexes bilaterally at both knee and ankle, and some motor loss. Tr. 180-82. He interpreted a prior examination as showing "a rather significant loss of disk height at L5-S1 with concurrent low of water signal, and some facet joint hypertrophy." Tr. 181. He opined that there were "rather limited expectations" that plaintiff would improve regardless of therapy. *Id*. Her pain complaints "probably consist of both discogenic and facetogenic components" relating to a lesion. *Id*.

The ALJ paraphrased Dr. Sibell's observations to conclude simply that "a significant component of claimant's pain also came from her complete lack of physical conditioning." Tr. 16. He overlooked or rejected Dr. Sibell's other findings and recommendations regarding plaintiff's pain.

Doctor Randall Chesnut also examined plaintiff and found "bilateral pars defects at L5," but without "anterolisthesis at L5-S1." Tr. 183. He noted a "long history of back pain" that radiates across her lumbar spine and the "lumbosacral junction." *Id*. He advised against surgery because of a likelihood that plaintiff's condition could regress to spondylolisthesis, which would then require fusion. Tr. 183-84.

The ALJ's decision referred to findings by "Randall Chestnut [sic], M.D.," that "did have some radicular irritation to the spondylitic disease she had and minor loss of height at L5-S1." Tr. 16. While the ALJ noted Dr. Chesnut's views regarding surgery, the ALJ mistakenly attributed an observation that plaintiff had a "minor loss of disc height at L5-S1" to Dr. Chesnut. The ALJ also overlooked the doctor's diagnoses of plaintiff's back pain.

An ALJ must provide clear and convincing reasons for rejecting uncontroverted expert opinions, and must provide specific, legitimate reasons for rejecting controverted expert

8 -- AMENDED OPINION AND ORDER

opinions.  *Lester v. Chater*, 81 F.3d 821, 830-32 (9th Cir. 1995); *see also Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988) (clear and convincing reasons must be provided to support rejection of a treating physician's ultimate conclusions).

"Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability."  *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989)).  An ALJ need not accept a treating physician's opinion that is conclusory, brief, and unsupported by clinical findings.  *Tonapetyan*, 242 F.3d at 1149 (citing *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992)).  However, an ALJ must give weight not only to the treating physician's clinical findings and interpretation of test results, but also to the doctor's subjective judgments.  *Lester*, 81 F.3d at 832-33 (citing *Embrey*, 849 F.2d at 422).

The ALJ's reasons for rejecting Dr. Thomas's opinions are specious.  While the doctor noted that no x-rays "were available for review," he nevertheless performed a comprehensive clinical examination that revealed unsteady toe walking, reduced range of motion, hypoactive reflexes at the knee and ankle, decreased strength of dorsiflexors and plantar flexors of both feet, decreased sensation to light touch over the entire right foot, and a positive straight leg raising test at sixty degrees.  Tr. 206-07.  Such findings are objective and supported by clinical examination.  The fact that Dr. Thomas also noted plaintiff's subjective complaints was appropriate and provides no rational basis for rejecting the doctor's expert conclusions.

9  -- AMENDED OPINION AND ORDER

The ALJ's suggestions that the doctor's failure to include a cervical examination and his possibly unique (yet undisputed) medical notation that plaintiff has hearing difficulties somehow provide grounds for rejecting the underlying medical opinions are mystifying.

This court concludes that the rationalizations presented for rejecting Dr. Thomas's opinions fall short of either the exacting standard for rejecting uncontroverted opinions (requiring clear and convincing reasons), or controverted expert opinion (requiring specific, legitimate reasons). Doctor Thomas's evaluations were plainly derived from objective medical findings, including formal testing, as well as from appropriate reliance upon his patient's reporting. The similar opinions and diagnoses of Drs. Sibell and Chesnut were also inadequately addressed.

When the Commissioner provides inadequate reasons for rejecting the opinions of a treating or examining physician, those opinions are generally credited as true as a matter of law. *Widmark v. Barnhart*, 454 F.3d 1063, 1069 (9th Cir. 2006) (citations omitted)*; see also Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004). These errors regarding the medical opinions presented, coupled with the failure to fully credit plaintiff's symptom testimony, discussed below, compel remand of this action. Because it is clear from the record that, accepting this evidence as true, the ALJ would be required to find plaintiff entitled to SSI, the remand shall compel the SSA to calculate and award benefits. *See Moisa v. Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004).

    2.    Plaintiff's Subjective Symptom Testimony

Plaintiff also challenges the ALJ's evaluation of plaintiff's testimony. Plaintiff asserts that the ALJ failed to assess plaintiff's credibility adequately.

If an ALJ finds that a claimant's testimony relating to limitations is unreliable, the ALJ must make a credibility determination citing the reasons why that testimony is unpersuasive. *See Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991). The ALJ must identify specifically what testimony is credible and what testimony undermines the claimant's complaints. *See Lester*, 81 F.3d at 834 (citation omitted); *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

In evaluating a claimant's claim of subjective symptom testimony, the ALJ must determine whether the claimant has produced objective medical evidence of an underlying impairment which could reasonably be expected to produce the symptoms alleged. 20 C.F.R. § 404.1529(a); *Smolen v. Chater*, 80 F.3d 1273, 1281-82 (9th Cir. 1996) (citation and quotation omitted).

The Ninth Circuit set out a threshold test in *Cotton v. Bowen*, 799 F.2d 1403 (9th Cir. 1986) (reaffirmed in *Bunnell*) to assist the ALJ in deciding whether to accept a claimant's subjective symptom testimony. If the claimant produces evidence that meets the *Cotton* test, and there is no evidence of malingering, then the ALJ can reject the claimant's testimony about the severity of symptoms only by offering specific, clear, and convincing reasons for doing so. *See Dodrill*, 12 F.3d at 918.

Under the *Cotton* test, a claimant who alleges disability based on subjective symptoms must meet two tests. First, the claimant "must produce objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged. . . .'" *Bunnell*, 947 F.2d at 344 (quoting 42 U.S.C. § 423(d)(5)(A) (1988)); *see also Cotton*, 799 F.2d at 1407.

Second, he or she must show that the impairment or combination of impairments could reasonably be expected to (not necessarily that it did) produce some degree of symptom. This means that the claimant need not produce objective medical evidence of the *symptom*, or the severity thereof:

> Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom. By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the *Cotton* test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon. Finally, the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. This approach reflects the highly subjective and idiosyncratic nature of pain and other such symptoms. . . . Thus, the ALJ may not reject subjective symptom testimony under the *Cotton* analysis simply because there is no showing that the impairment can reasonably produce the *degree* of symptom alleged (emphasis in original).

*Smolen*, 80 F.3d at 1282 (emphasis added) (citing *Bunnell*, 947 F.2d at 347-48).

In addition to medical evidence, factors relevant to the ALJ's credibility determination include: a plaintiff's daily activities; the location, duration, frequency, and intensity of his or her symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication; treatment, other than medication; measures used to relieve symptoms; and functional limitations caused by the symptoms. *Smolen*, 80 F.3d at 1284; *see also* 20 C.F.R. § 404.1529(c)(3).

"The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." *Smolen*, 80 F.3d at 1284. In determining that subjective testimony is not credible, the ALJ may rely on:

> (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure

12 -- AMENDED OPINION AND ORDER

> to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.

*Id*. (citations omitted).

In sum, if the plaintiff has met the burden of showing that his or her impairment or combination of impairments *could reasonably be expected to* (not that it did in fact) produce some degree of the symptoms that plaintiff's testimony describes, and there is no evidence suggesting that the plaintiff is malingering, the ALJ may not reject testimony regarding the severity of plaintiff's symptoms unless there are clear and convincing reasons for doing so. *Id*. at 1283; *see also Moisa*, 367 F.3d at 885.

Moreover, the ALJ is not permitted to disbelieve a plaintiff simply because no objective medical evidence supports the plaintiff's testimony regarding the severity of subjective symptoms from which the plaintiff suffers, particularly pain. *Robbins v. Social Sec. Admin.*, 466 F.3d 880, 884 (9th Cir. 2006) (citations and internal quotations omitted). To find a plaintiff not credible, the ALJ must rely either on reasons unrelated to the subjective testimony (*e.g.*, reputation for dishonesty), or on conflicts between the plaintiff's testimony and conduct, or upon internal contradictions in that testimony. *Id*. (citation and internal quotations omitted).

The ALJ must provide a "narrative discussion" containing specific reasons for the finding and supported by the evidence in the record, and is required to "make clear" the weight the adjudicator gave to the individual's statements and the reasons for that weight. *Id*. (citing SSR 96-7p and SSR 96-8p).

"While an ALJ may certainly find testimony not credible and disregard it as an unsupported, self-serving statement," a court cannot affirm such a determination "unless it is

supported by specific findings and reasoning." *Robbins*, 466 F.3d at 884-85 (internal quotation and citation omitted).

The extent of the ALJ's findings regarding plaintiff's credibility is a single enumerated Finding stating that the ALJ "finds the claimant's allegations regarding her limitation are not credible for the reasons set forth in the body of the decision." Tr. 25. The relevant portions of the "body of the decision" provides two stray references to the ALJ's view regarding plaintiff's testimony and credibility. *See* Tr. 23 (psychological report that otherwise was discredited by the ALJ indicated that plaintiff exaggerated her symptoms); Tr. 24 (non-examining SSA doctors concluded that plaintiff lacked credibility and the ALJ agreed with those conclusions but found the doctors' other conclusions unreasonable).

This analysis is meager and lacks any narrative discussion containing specific reasons for discrediting plaintiff or any indications of the weight the ALJ gave to plaintiff's statements and the reasons for that weight. The brief references to other discredited opinions fall far short of what is required when a plaintiff's testimony is rejected due to a perceived lack of credibility.

3.  Remand

As a result of the inadequate rejection of medical evidence and the inadequate explanation for rejecting plaintiff's testimony, this court concludes that a remand is appropriate in this matter. As noted above, 42 U.S.C. § 405(g) provides jurisdiction for this court to review administrative decisions in Social Security benefits cases.

While the first two sentences of Section 405(g) establish this court's jurisdiction, the fourth and sixth sentences of Section 405(g) set forth the exclusive methods by which district

courts may remand an action to the Commissioner. *Shalala v. Schaefer*, 509 U.S. 292, 296 (1993); *see also Melkonyan v. Sullivan*, 501 U.S. 89, 99-100 (1991).

Sentence four provides that the district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing" and is "essentially a determination that the agency erred in some respect in reaching a decision to deny benefits." *Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002) (quoting 42 U.S.C. § 405(g) and citing *Jackson v. Chater*, 99 F.3d 1086, 1095 (11th Cir. 1996)). A plaintiff who obtains a sentence four remand is considered a prevailing party for purposes of attorney's fees even when the case has been remanded for further administrative action. *Id*. (citing *Schaefer*, 509 U.S. at 297-302).

Conversely, remands ordered pursuant to sentence six of Section 405(g) "may be ordered in only two situations: where the Commissioner requests a remand before answering the complaint, or where new, material evidence is adduced that was for good cause not presented before the agency." *Akopyan*, 296 F.3d at 854-55 (citing *Schaefer*, 509 U.S. at 297 n. 2). Unlike sentence four remands, sentence six remands do not constitute final judgments. *Id*.

The issues presented in this action compel a remand under sentence four. Whether to remand under sentence four for an award of benefits, or for further proceedings, is a matter of judicial discretion. *Harman v. Apfel*, 211 F.3d 1172, 1177 (9th Cir. 2000).

A remand for further proceedings is unnecessary if the record is fully developed and it is clear from the record that the ALJ would be required to award benefits. *Holohan v. Massanari*,

15 -- AMENDED OPINION AND ORDER

246 F.3d 1195, 1210 (9th Cir. 2001). The rule recognizes "the importance of expediting disability claims." *Id*.

In cases in which it is evident from the record that benefits should be awarded, remanding for further proceedings would delay effectuating the primary purpose of the Social Security Act, which is to give financial assistance to disabled persons because they cannot sustain themselves. *Id*.

The decision whether to remand for further proceedings turns upon the likely utility of such proceedings. *Harman*, 211 F.3d at 1179. In this matter, this court concludes that the record is fully developed and remand would serve only to prolong the application process and further deny plaintiff benefits to which she is entitled.

It is clear from the record that the ALJ must find the claimant disabled after crediting the evidence in question, and additional proceedings are unnecessary to determine plaintiff's entitlement to benefits. The record is fully developed, and further proceedings "would serve no useful purpose." *See Lester*, 81 F.3d at 834 (if evidence that was improperly rejected demonstrates that claimant is disabled, court should remand for payment of benefits).

Moreover, permitting the Commissioner a further opportunity under these circumstances to amend findings to comport with a denial of disability benefits is not in the interests of justice. *See Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989) (if remand for further proceedings would only delay the receipt of benefits, judgment for the claimant is appropriate).

## CONCLUSION

Based on the foregoing, this court concludes that the record is fully developed and that further administrative proceedings would serve no useful purpose. Under the applicable

standards, after giving the evidence in the record the effect required by law, plaintiff is unable to engage in any substantial gainful activity by reason of her impairments, and she is disabled under the Act. Accordingly, the decision of the Commissioner is reversed, and this case is remanded to the Commissioner for the calculation and award of benefits to plaintiff Nina E. Howard.

IT IS SO ORDERED.

DATED this  4   day of May, 2007.

             /s/ Ancer L. Haggerty            
                Ancer L. Haggerty
              United States District Judge

17 -- AMENDED OPINION AND ORDER